FILED BY _____ D.C.

JUN 08 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| JOHN A. CASTRO and CASTRO & CO., LLC, <br> Plaintiffs, <br><br> v. <br><br> ROYAL CARIBBEAN CRUISE LINE <br><br> Defendant. | Case No. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, John A. Castro and Castro & Co., LLC, (hereinafter "Plaintiffs") file this lawsuit against Royal Caribbean Cruise Line (hereinafter "Royal Caribbean," or "Defendant") and allege,

### PARTIES

1. Plaintiff, John A. Castro, is an individual who is a citizen of the state of Texas.

2. Plaintiff, Castro & Co., LLC, is a limited liability company whose principal business address is located in Texas at 12 Park Place, Mansfield, Texas 76063.

3. Defendant, Royal Caribbean Cruise Line, is a corporation that is incorporated under the laws of the State of Florida. Defendant has its principal place of business in the State of Florida. Defendant my may be served with process by serving their registered agent, Bradley H. Stein, at 1050 Caribbean Way, Miami, FL 33132.

### JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

## FACTS

6. I, John A. Castro, am the managing member and CEO of Castro & Co., LLC.

7. On or about April 24, 2019, I contacted Defendant to book a company trip for roughly thirty employees of Castro & Co. for the purpose of growing together, to validate my employees, boost company morale, and discuss business ventures.

8. Defendant escalated me twice in order to reach a proper booking agent. First, I spoke with a representative who stated that I needed to be transferred to the groups department since he was booking several suites. Once I was transferred to the groups department, a second representative stated that I needed to be transferred to large group sales. Thereafter, I finally reached Royal Caribbean representative, Adrian Collada, in large group sales.

9. When speaking to Mr. Collada about the possibility of booking a company cruise, I expressed that my most important desires for this trip were the following: (1) that every group member have access to eat in the Coastal Kitchen for all meals in order to provide for group meetings and group bonding, (2) to have the drink-package included for every group member, and (3) Wi-Fi included in all Suites.

10. As such, Mr. Collada promised that with booking three Grand Suites and ten Junior Suites for a total cost of $110,006.65, all of my requests would be met. This cost encompassed thirty group members for the Symphony of the Seas cruise departing on July 13, 2019.

11. I communicated with Mr. Collada for roughly a month discussing the group prior to formally booking the cruise. On or about May 30, 2019, I entered into a contract with Defendant. A copy of the contract is attached hereto as Exhibit A. As a result, I paid the amount of $110,006.65 to Defendant prior to departing on July 13, 2019. I contracted with Defendant on the belief that they each group member would have access to eat in the Coastal Kitchen for all meals, to have the drink

package included for each member, and to have Wi-Fi included in each Suite.

12. Once the Castro & Co. group boarded the Royal Caribbean ship, I quickly discovered that I did not receive what I had contracted with Defendant for.

13. First, the only rooms that had Wi-Fi were the Grand Suites, leaving the ten Junior Suites without Wi-Fi. Instead of Defendant accommodating my group, I had to pay an additional $2,350.00 in order to turn the Wi-Fi on for the ten Junior Suites.

14. Second, but most importantly, the three Grand Suites were the only rooms granted access to the Coastal Kitchen for every meal. The ten Junior Suites had very limited access. On the first day of the cruise, I called the Coastal Kitchen to make a breakfast reservation for the entire thirty-member group of Castro & Co. for the following morning, July 14, 2019. Much to my surprise, Defendant told me that the *only* members of the group allowed to eat in the Coastal Kitchen for breakfast and lunch were the three Grand Suite rooms. The guests in the ten Junior Suites were not allowed to eat in the Coastal Kitchen, except for dinner starting at 4 p.m. However, I was also told by Defendant that the Coastal Kitchen would not be able to accommodate all of my group members for dinner at any time during the length of the cruise.

15. The Coastal Kitchen is a premium restaurant-style eating place onboard the ship. Access to the Coastal Kitchen includes free premium coffee, free premium food menu, and unlimited drinks. Additionally, the Coastal Kitchen is a much quieter, exclusive place to eat onboard as it only accommodates 60-70 individuals at a time. Individuals allowed access to the Coastal Kitchen can choose to eat at whatever time they choose for breakfast and lunch and need only call to make a reservation at their desired time for dinner.

16. The main eating venue for all cruise goers is the Deck 5 Dining Hall. In this venue, there are 300-400 individuals accommodated at a time. The cruise goers are all assigned an allotted

time slot for when they can go to the Dining Hall to eat their meals. The premium food menu and drinks are all extra charges.

17. Since we were not allowed in the Coastal Kitchen as promised, Defendant offered on day 3 of the cruise to make a reservation at an allotted time for us in Deck 5 dining hall. Defendant did not work with me on a good timing for the group; instead, Defendant scheduled a time for the group and told us when we could have dinner together. The Castro & Co. group met in the Deck 5 dining hall three times. However, the setting was very noisy due to the large amount of individuals eating at a time, and the allotted time did not work within the group's schedule often. Therefore, this was not the equivalent of being able to eat as a group in the Coastal Kitchen.

18. In addition, my group had to expend additional costs on restaurant style food due to not having access to the Coastal Kitchen.

19. Moreover, two of the guests staying in Junior Suites tried to enter the Coastal Kitchen at 5:15 p.m. one evening, well after 4 p.m., to get coffee and the staff kicked them out.

20. Lastly, Defendants breached the contract by not including the drink package for each group member. This package was again not included for any guest, resulting in an additional charge of $9,000.00. Conversely, had the group gained proper access to the Coastal Kitchen, as contracted, the drinks would have been included with the group's meals.

21. I emailed Mr. Collada with my concerns several times for all the discrepancies in the trip. During these exchanges, Mr. Collada stated that he had no knowledge of the restrictions on what times each group member was allowed into the Coastal Kitchen, and admits that he knew the drink package was only offered for suites higher than Grand Suites, meaning Owner Suites and above. In addition, Mr. Collada stated that he did not review the restrictions on amenities for each suite level before making a promise to me and booking my trip. Mr. Collada also stated that he was

advised to not reply to me until Defendant got the situation settled. However, Defendant did not reach out to me to try and resolve this matter on their own.

22. After getting escalated twice to reach an agent that could handle large group bookings, it would be presumed that, at the very least, Mr. Collada would know what Suites were allowed certain amenities. Instead, although I expressed my must-have desires for booking a group cruise with Defendant, Mr. Collada now admits to me of having no knowledge of the restrictions on the amenities.

23. I booked a business cruise with Defendant based on the belief that I was contracting to have Wi-Fi, access to the Coastal Kitchen for each meal, and to have the drink-package included for all group members for the price of $110,006.65.

24. Defendant's negligence and breach caused severe harm to me and my group. The sole business purpose of the cruise was diminished by Defendants' negligence and breach. The business purpose was so that me and my business group could grow together, validate my employees, boost company morale, and discuss business ventures. We did not get to meet to discuss events, business, etc. and in fact, most of the members of the group did not get to see each other at all during the trip.

25. My group and myself suffered high levels of distress, anguish, and anger due to the breaches of contract and trying to fix these breaches without any help from staff of Defendant.

## COUNT I
### (Breach of Contract)

26. I incorporate paragraphs 1-25 as if fully set forth herein.

27. Defendant and I executed a valid and enforceable contract whereby I agreed to pay the amount of $110,006.65. In exchange, Defendant agreed to provide me and my group with three Grand Suites and ten Junior Suites on the Symphony of the Seas Cruise ship departing on July 13, 2019. Defendant agreed that the following would be included in the price of $110,006.65: (1) each

suite would have total access to the Coastal Kitchen for all meals (2) each suite would have the drink package, and (3) each suite would have Wi-Fi in their rooms.

28.  I performed my obligation under the contract by submitting payment of $110,006.65.

29.  Defendant failed to perform his contractual obligations. Specifically, Defendant failed to allow each group member access to the Coastal Kitchen for all meals, failed to include the drink package for all Suites, and failed to include Wi-Fi for the ten Junior Suites. Defendant's nonperformance is a breach of the our contract.

30.  Defendant's breach caused injury to me, which resulted in the following damages:

   a. Drink Package - $9,952.00
   b. Wi-Fi - $2,350.00
   c. Food - $983.00
   d. Non-access to Coastal Kitchen - $110,006.65

31.  I seek actual damages within the jurisdictional limits of this Court.

## COUNT II
### (Negligence)

32.  I incorporate paragraphs 1-25 as if fully set forth herein.

33.  Defendant owed me a legal duty of care. Defendant and I had a special relationship due to the contract that the parties entered into. Defendant had a high degree of care to me because the entity is a common carrier. Defendant breached that duty of care through the acts of their employee, Mr. Collada.

34.  Defendant is vicariously liable for the acts of their employee in contracting with me and Castro & Co. Mr. Collada's actions were performed while in the employment of Defendant and were within the course and scope of that employment or within the authority delegated to the

employee.

35. Mr. Collada admits to making promises without correct knowledge and deceiving me in order to enter into a contract.

36. Defendant's breach of duty proximately caused injury, which resulted in the following damages:

   a. Actual damages in the amount of $123,291.65, comprised of additional costs in the amount of $13,285.00, and the cost of the trip in the amount of $110,006.65.

   b. Exemplary damages in the amount of $250,000.00 for emotional distress and mental anguish.

37. I seek actual damages within the jurisdictional limits of this Court.

## COUNT III
### (Negligent Misrepresentation)

38. I incorporate paragraphs 1-25 as if fully set forth herein.

39. Defendant represented me and Castro & Co. that the purchase of three Grand Suites and ten Junior Suites on the Symphony of the Seas cruise on July 13, 2019 would include full access to the Coastal Kitchen for each suite member, the drink package for each suite member, and Wi-Fi for each suite member.

40. Defendant made the representation in the course of Defendant's business. Defendant is vicariously liable for the acts of their employee in contracting with me. Mr. Collada's actions were performed while in the employment of Defendant and were within the course and scope of that employment or within the authority delegated to the employee.

41. Mr. Collada admits to making promises without the correct knowledge and deceiving me in order to enter into a contract.

42. Defendant made the representation in the course of a transaction in which Defendant

had an interest. Defendant received $110,006.65 in exchange for the promises made.

43. Defendant's representation was a misstatement of fact, as my group did not receive: full access to the Coastal Kitchen for each suite member, the drink package for any suite member, or Wi-Fi for each suite member.

44. Defendant did not use reasonable care in communicating the information to me.

45. I justifiably relied on Defendant's representation.

46. Defendant's misrepresentation proximately caused injury, which resulted in the following damages:

   a. Actual damages in the amount of $123,291.65, comprised of additional costs in the amount of $13,285.00, and the cost of the trip in the amount of $110,006.65.

   b. Exemplary damages in the amount of $250,000.00 for emotional distress and mental anguish.

47. I seek actual damages within the jurisdictional limits of the Court.

## COUNT IV
### (Equitable Relief)

48. I incorporate paragraphs 1-25 as if fully set forth herein.

49. In the alternative to monetary damages, I seek equitable relief of specific performance of the contract.

50. I seek specific performance of Defendant providing a new cruise to the group of Castro & Co. with the original promises honored.

## DAMAGES

51. As a direct and/or proximate result of Defendants' wrongful conduct, I have suffered actual, consequential, and/or incidental damages. I seek actual and compensatory damages to the full extent allowed by law.

52. I seek recovery of the full costs of this action in the amount of $373,291.65.

## PRAYER

WHEREFORE, with respect to Counts I-IV, I respectfully pray that an order be entered:

a. Entering judgment in favor of Plaintiffs and against Defendant for damages pursuant to Defendant's breach of contract;

b. In the alternative, entering judgment in favor of Plaintiffs and against Defendant for damages pursuant to Defendant's negligence;

c. In the alternative, entering judgment in favor of Plaintiffs and against Defendant for damages pursuant to Defendant's negligent misrepresentation;

d. In the alternative, entering judgment in favor of Plaintiffs and against Defendant equitable relief of specific performance;

e. Awarding costs and reasonable attorney's fees; and

f. Granting such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 2, 2020

John Anthony Castro
12 Park Place
Mansfield, Texas 76063
J.castro@CastroAndCo.com
Tel. (202) 594-4344
**Plaintiff**